GROOM, *Respondent,*
*v.*
MONTGOMERY WARD, INC., *Appellant.*
(No. A-7701—01481, CA 8424)
569 P2d 43

Ridgway K. Foley, Jr., Portland, argued the cause for appellant. With him on the brief were Michael D. Hoffman, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Raymond Conboy, Portland, argued the cause for respondent. On the brief were Donald R. Wilson, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

PER CURIAM.

**PER CURIAM.**

In this worker's compensation case the sole issue is a factual one: were claimant's symptoms of February 1976 caused by his industrial injury of October 23, 1975? The referee and the Workers' Compensation Board said no; the trial judge said yes. Like the referee and Board, we find that the claimant has not sustained his burden of proof.

We agree with the reasoning of the referee's opinion. It reads:

"* * * At issue was claimant's request for further medical treatment and a reopening of the claim with compensation for temporary total disability.

"FINDINGS:

"Claimant is a 24-year-old workman who was employed by Montgomery Ward & Co. in the warehouse as an order filler (heavy). While so engaged, claimant sustained compensable injury October 23, 1975 in a lifting incident * * *. This occurred about 11:30 a.m. on a Thursday * * *. Claimant continued the balance of the day on Thursday and also worked his regular shift Friday. On Monday, October 27, he consulted the Montgomery Ward medical center where he was seen by Dr. Battalia. He was treated with pain medication and hot wet packs. He was seen at the medical center on October 27 and October 28 * * *. He next saw Dr. Battalia on November 10 who then referred him to a physiotherapist for six treatments * * *.

"Claimant didn't miss any time from work, and continued performing the same duties he performed prior to the industrial injury. His work required a lot of lifting—with the weight of the items running from light to heavy. So far as his supervisor could tell there wasn't any change in either claimant's ability or physical functions. Although claimant was classified by his supervisor as a 'good worker' claimant was discharged December 19, 1975 because of tardiness in reporting to work and absenteeism. Prior to his termination, the last record of treatment is for November 25, 1975.

"Claimant continued with his studies in school until January 1976 at which time he discontinued because of

the school's scheduling. He worked a few days doing some construction plumbing—he helped install some bathroom fixtures. He worked the better part of April building a bar. According to his testimony the only heavy lifting he did was to help three other persons move a freezer in connection with the construction of the bar. On February 9, 1976 he consulted Dr. Battalia at the doctor's office giving a history of back pain for. about three weeks, which had worsened over the previous weekend. Dr. Battalia re-referred claimant to the physiotherapist for additional physiotherapy. Then claimant and Dr. Battalia had a falling out and the physiotherapist referred claimant to Dr. Tom Boyden.

"Dr. Boyden related claimant's back symptomatology to the industrial injury of October 23, 1975 * * *. Dr. Battalia opined that from a medical standpoint he was unable to causally relate the symptomatology of February 1976 to the industrial injury of October 1975 * * *.

"Claimant argues the reason Dr. Battalia would not make a causal connection was because he is the company doctor for Montgomery Ward and after claimant was fired Dr. Battalia appeared to think he was no longer eligible for benefits. The employer argues it wasn't until claimant was turned down for unemployment benefits that he attempted to get his Workmen's Compensation claim open for not only medical care, but for compensation for temporary total disability.

"The medical documentation shows a notation in the record at the Montgomery Ward medical center to the effect that on November 26 claimant was much better and that he did not go for physiotherapy that day nor the day before. He was to notify the medical department 'if necessary' * * *. The bill from the physical therapy center shows claimant actually did receive physiotherapy November 25—but that was the last date * * *. So far as the documentation is concerned nothing further occurred of a treatment nature until February 9, 1976. Claimant did testify it took him a week to get in to see the doctor, which would indicate he made the appointment around February 2.

"It appears to me the employer's argument that claimant was able to do heavy work until the day he was

fired has merit. He felt so good it was unnecessary for him to see either the doctor or the physiotherapist, and then continued to do the same type of work (which involved lifting) until the day of his termination.

"After giving consideration to all the evidence, it appears claimant sustained a soft tissue injury in October 1975 which, after a short period of conservative treatment, cleared up to the point he could do his regular work without any complaints. It wasn't until a month or a month and a half later that he again commenced having symptomatology. I conclude, as did Dr. Battalia, there is no causal relationship between the industrial injury and the symptomatology of February 1976.

"* * * * *."

Reversed.